**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

FILED
RICHARD W. NAGEL
CLERK OF COURT

JUL 30 2026 2:22 P

U.S. DISTRICT COURT
SOUTHERN DISTRICT
OF OHIO-COLUMBUS

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. |
| Plaintiff, | JUDGE |
| v. | **INDICTMENT** |
| TOYA LYNN BROWN, | 18 U.S.C. § 371 |
| INDIA BROWN, | 18 U.S.C. § 1343 |
| MALAYSIA BROWN, | 18 U.S.C. § 1349 |
| JOETTA WALLACE, | 26 U.S.C. § 7206(2) |
| JASALYN MOFFITT, | |
| CHRISSHAUNA DEAN, | |
| TIFFANY COATES, | |
| and | |
| NATASHA CARTER, | |
| Defendants. | |

**THE GRAND JURY CHARGES:**

At all times material to this Indictment:

## INTRODUCTORY ALLEGATIONS

1.      Defendant TOYA LYNN BROWN ("TOYA BROWN") was a resident of Grove City, Ohio. TOYA BROWN operated a tax preparation business in Columbus, Ohio called Major Moves Tax Services LLC ("Major Moves"). TOYA BROWN, who had been preparing federal and state income tax returns for clients since in or about 2018, participated directly in the

preparation and filing of tax returns for clients and recruited, supervised, directed, and trained other personnel of Major Moves, who in turn also prepared and filed client tax returns.

2. Defendant INDIA BROWN was a resident of Columbus, Ohio, and was employed as a tax preparer by Major Moves since at least in or about 2021. INDIA BROWN is the daughter of TOYA BROWN.

3. Defendant MALAYSIA BROWN was a resident of Pickerington, Ohio and is the daughter of TOYA BROWN. MALAYSIA BROWN assisted with recruiting clients to Major Moves and received a portion of the fees charged. In 2018, TOYA BROWN registered Major Moves with the state of Ohio under MALAYSIA BROWN's name. Between approximately 2018 through 2023, TOYA BROWN falsely indicated to third parties, including multiple U.S. government agencies and financial institutions, that MALAYSIA BROWN was the owner of Major Moves—when in fact TOYA BROWN was always the true owner.

4. Defendant JOETTA WALLACE ("WALLACE") was a resident of Columbus, Ohio and has prepared taxes for over twenty years. WALLACE was employed as a tax preparer by Major Moves since at least in or about 2019.

5. Defendant JASALYN MOFFITT ("MOFFITT") was a resident of Columbus, Ohio and was employed as a tax preparer by Major Moves since at least in or about 2019.

6. Defendant CHRISSHAUNA DEAN ("DEAN"), was a resident of Reynoldsburg, Ohio and was employed as a tax preparer at Major Moves since at least in or about 2022.

7. Defendant TIFFANY COATES ("COATES"), was a resident of Columbus, Ohio and was employed as a tax preparer by Major Moves since at least in or about 2020.

8. Defendant NATASHA CARTER ("CARTER"), was a resident of Columbus, Ohio and was employed as a tax preparer by Major Moves since at least in or about 2021.

2

9. The Internal Revenue Service ("IRS") was an agency of the U.S. Department of the Treasury responsible for administering the tax laws of the United States and collecting taxes owed to the United States.

10. A Form 1040, U.S. Individual Income Tax Return ("Form 1040"), was used by U.S. taxpayers to file an annual income tax return.

11. A Form 2441, Child and Dependent Care Expenses ("Form 2441"), was used to report payments made to someone to care for a taxpayer's child or other qualifying person.

12. A Schedule C Profit or Loss from Business ("Schedule C") was used to report income or loss from a business operated or a profession practiced as a sole proprietor. An activity qualifies as a business if the primary purpose for engaging in the activity is for income or profit and the taxpayer is involved in the activity with continuity and regularity.

13. A Form 7202, Credits for Sick and Family Leave for Certain Self-employed Individuals ("Form 7202") was used to calculate refundable qualified sick and family leave equivalent credits if an eligible self-employed individual was unable to perform services due to certain COVID-19 related circumstances between April 1, 2020 and September 30, 2021. To qualify for the qualified sick and family leave equivalent credit, the taxpayer must have regularly carried on a trade or business, or been a partner in such a business, and either been subject to federal, state or local quarantine or isolation due to COVID-19; was advised to self-quarantine by a health professional due to COVID-19; cared for an individual or family member who was subject to such a quarantine, among other restrictions. The credit is included on the self-employed individual's Form 1040 and reduces their tax liability.

3

14.     A federal income tax refund was money a taxpayer received if they paid more tax than they owed, and/or if they claimed refundable tax credits that exceeded their tax liability, for a given tax year.

## TAX PREPARATION CONSPIRACY AND RELATED OFFENSES
### (Conspiracy to Defraud the United States; Preparation and Presentation of False Returns)

### Overview of the Tax Preparation Fraud Scheme

15.     Between approximately 2019 through 2023, TOYA BROWN oversaw a fraud scheme, in which TOYA BROWN and her employees and co-conspirators, including INDIA BROWN, WALLACE, MOFFITT, DEAN, COATES, CARTER, and others, prepared and submitted false and fraudulent tax returns to the IRS on behalf of Major Moves clients. TOYA BROWN and her co-conspirators utilized, among other means: (1) false Forms 7202; (2) false Schedules C, often for businesses that did not even exist; and (3) false Forms 2441. TOYA BROWN and her co-conspirators falsely claimed credits and deductions to fraudulently lower clients' overall tax liability and to generate fraudulent tax refunds.

16.     Clients would meet with Major Moves personnel, including the defendants, at offices in Columbus, Ohio to provide supporting documents, such as copies of their driver's license, social security cards, and wage information, to complete their tax returns. In some instances, clients would send documents via text messages to the defendants and other tax preparers at Major Moves. Many Major Moves clients were relatively low-income wage earners and/or gig workers who provided services such as styling hair and nails, driving (for example, for Uber or Lyft), and unlicensed home childcare. Most Major Moves clients were not self-employed and did not identify themselves as business owners. However, TOYA BROWN instructed her co-conspirators and other tax preparers at Major Moves to fraudulently create Schedules C for clients to indicate, falsely, that the clients were business owners. TOYA

4

BROWN further instructed her co-conspirators and tax preparers to report false gross receipts and false business expenses on Schedules C. Many of the numbers that TOYA BROWN and her co-conspirators entered on client tax returns were fictitious and were not supported by information or documentation provided by the clients.

17. By creating fictitious Schedules C for clients who were not proprietors of any business or were not self-employed, TOYA BROWN, INDIA BROWN, WALLACE, MOFFITT, DEAN, COATES, and CARTER were also able to prepare and file Forms 7202 for clients who were not eligible for the corresponding credits. TOYA BROWN and her co-conspirators prepared fraudulent Forms 7202 by reporting, with no evidence or documentation, that Major Moves clients missed over one hundred days of work individually in a calendar year due to COVID-19 illness.

18. As the true owner and day-to-day operator of Major Moves, TOYA BROWN directed many aspects of the fraud scheme. For example, TOYA BROWN instructed the defendants, and others, to fabricate both businesses and business expenses to fraudulently increase the clients' refunds. TOYA BROWN also instructed the tax preparers at Major Moves to fabricate the number of days missed due to COVID-19 on Forms 7202.

19. The defendants benefited financially from the fraud scheme and were economically incentivized to perpetrate it. TOYA BROWN, INDIA BROWN, WALLACE, MOFFITT, DEAN, COATES, and CARTER, along with other return preparers, would receive a portion of preparation fees (that is, what Major Moves charged clients) for returns they prepared. Additionally, Major Moves charged more for preparing a Schedule C, even for clients who were not appropriate Schedule C filers and had no knowledge of the Schedule C prepared and filed on their behalf.

## STATUTORY ALLEGATIONS

### COUNT ONE
### (Conspiracy to Defraud the United States)

20.    The allegations in paragraphs 1 through 19 of this Indictment are repeated and realleged as if fully set forth here.

21.    Between approximately 2019 and 2023, in the Southern District of Ohio and elsewhere, TOYA LYNN BROWN, INDIA BROWN, JOETTA WALLACE, JASALYN MOFFITT, CHRISSHAUNA DEAN, TIFFANY COATES, and NATASHA CARTER, defendants here, unlawfully, voluntarily, intentionally and knowingly conspired, combined, confederated, and agreed with each other and with other individuals both known and unknown to the Grand Jury to defraud the United States of America by impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the U.S. Department of the Treasury in the ascertainment, computation, assessment, and collection of the revenue: namely, income taxes.

### Manner and Means of the Conspiracy

22.    The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

23.    TOYA BROWN instructed her return preparers at Major Moves to fill out client questionnaires with fabricated gross receipts, expenses, and deductions, in lieu of providing the questionnaires to the clients for them to fill out with accurate information. She also instructed the return preparers to fill out the questionnaires after the tax return was completed to ensure that the fabricated supporting paperwork matched the false return.

6

24. TOYA BROWN, INDIA BROWN, WALLACE, MOFFITT, DEAN, COATES, and CARTER fabricated Schedule C businesses for their clients to increase the clients' tax refund and to create eligibility for Form 7202 COVID-19 credits.

25. TOYA BROWN, INDIA BROWN, WALLACE, MOFFITT, DEAN, COATES, and CARTER inserted entirely fictitious information (for example, number of days of work missed due to COVID-19) on Forms 7202 to fraudulently increase clients' refunds.

26. TOYA BROWN, INDIA BROWN, WALLACE, MOFFITT, DEAN, COATES, and CARTER charged clients for the preparation of Schedules C that were wholly fabricated and of which the clients had no knowledge.

27. The defendants shared in a portion of the preparation fees that Major Moves collected. Major Moves charged higher preparation fees for additional Forms and Schedules, such as the false and fraudulent Schedules C and Forms 7202.

## Overt Acts

28. In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of Ohio and elsewhere:

   a. In or about 2021 through 2022, TOYA BROWN instructed the tax preparers at Major Moves to utilize Schedules C to generate false deductions and/or refunds for clients;

   b. On or about February 10, 2021, COATES prepared and caused to be prepared, and electronically filed and caused to be filed, a 2020 Form 1040 for taxpayer Client 1, knowing it contained false information to fraudulently reduce Client 1's tax liability and/or generate a refund to which Client 1 was not entitled;

7

c. On or about March 14, 2021, MOFFITT prepared and caused to be prepared, and electronically filed and caused to be filed, a 2020 Form 1040 for taxpayer Client 2, knowing it contained false information to fraudulently reduce Client 2's tax liability and/or generate a refund to which Client 2 was not entitled;

d. On or about January 3, 2022, WALLACE prepared and caused to be prepared, and electronically filed and caused to be filed, a 2021 Form 1040 for taxpayer Client 3, knowing it contained false information to fraudulently reduce Client 3's tax liability and/or generated a refund to which Client 3 was not entitled;

e. On or about January 10, 2022, DEAN prepared and caused to be prepared, and electronically filed and caused to be filed, a 2021 Form 1040 for taxpayer Client 4, knowing it contained false information to fraudulently reduce Client 4's tax liability and/or generate a refund to which Client 4 was not entitled;

f. On or about January 17, 2022, INDIA BROWN prepared and caused to be prepared, and electronically filed and caused to be filed, a 2021 Form 1040 for taxpayer Client 5, knowing it contained false information to fraudulently reduce Client 5's tax liability and/or generate a refund to which Client 5 was not entitled;

g. On or about January 19, 2022, MOFFITT prepared and caused to be prepared, and electronically filed and caused to be filed, a 2021 Form 1040 for taxpayer Client 2, knowing it contained false information to fraudulently reduce Client 2's tax liability and/or generate a refund to which Client 2 was not entitled;

h. On or about January 25, 2022, TOYA BROWN prepared and caused to be prepared, and electronically filed and caused to be filed, a 2021 Form 1040 for

8

taxpayer Client 6, knowing it contained false information to fraudulently reduce Client 6's tax liability and/or generate a refund to which Client 6 was not entitled;

i.  On or about February 12, 2022, CARTER prepared and caused to be prepared, and electronically filed and caused to be filed, a 2021 Form 1040 for taxpayer Client 7, knowing it contained false information to fraudulently reduce Client 7's tax liability and/or generate a refund to which Client 7 was not entitled;

j.  On or about February 27, 2022, TOYA BROWN prepared and caused to be prepared, and electronically filed and caused to be filed, a 2021 Form 1040 for taxpayer Client 8, knowing it contained false information to fraudulently reduce Client 8's tax liability and/or generate a refund to which Client 8 was not entitled;

k.  On or about March 14, 2022, CARTER prepared and caused to be prepared, and electronically filed and caused to be filed, a 2021 Form 1040 for taxpayer Client 9, knowing it contained false information to fraudulently reduce Client 9's tax liability and/or generate a refund to which Client 9 was not entitled;

l.  On or about March 28, 2022, INDIA BROWN prepared and caused to be prepared, and electronically filed and caused to be filed, a 2021 Form 1040 for taxpayer Client 10, knowing it contained false information to fraudulently reduce Client 10's tax liability and/or generate a refund to which Client 10 was not entitled;

m.  On or about April 13, 2022, COATES prepared and caused to be prepared, and electronically filed and caused to be filed, a 2021 Form 1040 for taxpayer Client 11, knowing it contained false information to fraudulently reduce

9

Client 11's tax liability and/or generate a refund to which Client 11 was not entitled;

n. On or about June 25, 2021, check number 750 was written from the Major Moves PNC Business Checking Account, ending in 0505, to MOFFITT, in the amount of $5,000, with memo line, "Payroll." At the time, TOYA BROWN and MALAYSIA BROWN were the only authorized signatories on the PNC Business Checking Account, ending in 0505, and check number 750 bore signatures for TOYA BROWN and MALAYSIA BROWN; and

o. On or about April 15, 2022, check number 1191 was written from the Major Moves PNC Business Checking Account, ending in 0505, to WALLACE, in the amount of $2,750, with memo line, "Payroll." At the time, TOYA BROWN and MALAYSIA BROWN were the only authorized signatories on the PNC Business Checking Account ending in 0505, and check number 1191 bore the signature for TOYA BROWN.

(Title 18, United States Code, Section 371)

## COUNTS TWO THROUGH THIRTEEN
**(Aiding and Assisting in the Preparation of False Tax Returns)**

The Grand Jury further charges:

29. The allegations in paragraphs 1 through 19 of this Indictment are repeated and realleged as if fully set forth here.

30. On or about the dates set forth below, in the Southern District of Ohio and elsewhere, TOYA LYNN BROWN, INDIA BROWN, JOETTA WALLACE, JASALYN MOFFITT, TIFFANY COATES, CHRISSHAUNA DEAN, and NATASHA CARTER, as specified and designated below, willfully aided and assisted in, and procured, counseled, and

10

advised the preparation and presentation to the IRS of Forms 1040, and accompanying forms and schedules, for the taxpayers listed below, and for the tax years listed below, which were false and fraudulent as to material matters. The tax returns reported false businesses and fraudulently claimed self-employed COVID-19 tax credits, among others, whereas, as the listed defendants knew, the taxpayers did not have such businesses and business receipts, and were not entitled to claim the COVID-19 self-employment and other credits in the amounts listed:

| Count | Taxpayer | Tax Year & Form | Return Preparer | Filing Date | False Items |
|---|---|---|---|---|---|
| 2 | Client 1 | 2020 Form 1040 | TIFFANY COATES | 2/10/2021 | Schedule C, Line 1—$15,680<br>Schedule 3, Part II, Line 12b—$4,940 |
| 3 | Client 2 | 2020 Form 1040 | JASALYN MOFFITT | 3/14/2021 | Schedule C, Line 1—$10,000<br>Form 7202, Part I, Line 1—25 days<br>Form 7202, Part II, Line 25—50 days |
| 4 | Client 3 | 2021 Form 1040 | JOETTA WALLACE | 1/3/2022 | Schedule C, Line 1—$21,113<br>Schedule C, Line 8—$49<br>Schedule C, Line 18—$51<br>Schedule C, Line 22—$401<br>Schedule C, Line 27a—$420<br>Form 7202, Part I, Line 1—18 days<br>Form 7202, Part II, Line 25a—46 days<br>Form 7202, Part III, Line 36—12 days<br>Form 7202, Part IV, Line 59—49 days |
| 5 | Client 4 | 2021 Form 1040 | CHRISSHAUNA DEAN | 1/10/2022 | Schedule C, Line 1—$15,799<br>Schedule C, Line 8—$51<br>Schedule C, Line 18— |

11

| | | | | | |
|---|---|---|---|---|---|
| | | | | | $199<br>Schedule C, Line 22—$249<br>Form 7202, Part I, Line 1—39 days<br>Form 7202, Part II, Line 25a—45 days<br>Form 7202, Part III, Line 36—54 days<br>Form 7202, Part IV, Line 59—50 days |
| 6 | Client 5 | 2021 Form 1040 | INDIA BROWN | 1/17/2022 | Form 7202, Part I, Line 1—23 days<br>Form 7202, Part II, Line 25a—42 days<br>Form 7202, Part III, Line 36—61 days<br>Form 7202, Part IV, Line 59—50 days |
| 7 | Client 2 | 2021 Form 1040 | JASALYN MOFFITT | 1/19/2022 | Schedule C, Line 1—$15,571<br>Schedule C, Line 8—$133<br>Schedule C, Line 22—$257<br>Form 7202, Part I, Line 1—45 days<br>Form 7202, Part II, Line 25a—50 days<br>Form 7202, Part III, Line 36—14 days<br>Form 7202, Part IV, Line 59—60 days |
| 8 | Client 6 | 2021 Form 1040 | TOYA BROWN | 1/25/2022 | Form 7202, Part I, Line 1—48 days<br>Form 7202, Part II, Line 25a—50 days<br>Form 7202, Part III, Line 36—14 days<br>Form 7202, Part IV, Line 59—60 days |
| 9 | Client 7 | 2021 Form 1040 | NATASHA CARTER | 2/12/2022 | Schedule C, Line 1—$56,764<br>Schedule C, Line 8—$528 |

12

| | | | | | |
|---|---|---|---|---|---|
| | | | | | Schedule C, Line 22—$1,987<br>Form 7202, Part I, Line 1—90 days<br>Form 7202, Part II, Line 25a—50 days<br>Form 7202, Part III, Line 36—45 days<br>Form 7202, Part IV, Line 59—60 days |
| 10 | Client 8 | 2021 Form 1040 | TOYA BROWN | 2/27/2022 | Form 2441, Line 1—$13,252<br>Form 7202, Part I, Line 1—19 days<br>Form 7202, Part II, Line 25a—50 days<br>Form 7202, Part III, Line 36—11 days<br>Form 7202, Part IV, Line 59—50 days |
| 11 | Client 9 | 2021 Form 1040 | NATASHA CARTER | 3/14/2022 | Form 7202, Part I, Line 1—67 days<br>Form 7202, Part II, Line 25a—50 days<br>Form 7202, Part III, Line 36—142 days<br>Form 7202, Part IV, Line 59—60 days |
| 12 | Client 10 | 2021 Form 1040 | INDIA BROWN | 3/28/2022 | Form 2441, Line 1—$11,115<br>Schedule C, Line 1—$57,112<br>Form 7202, Part I, Line 1—15 days<br>Form 7202, Part III, Line 36—18 days |
| 13 | Client 11 | 2021 Form 1040 | TIFFANY COATES | 4/13/2022 | Schedule C, Line 8—$582<br>Schedule C, Line 22—$2,228<br>Form 7202, Part II, Line 25a—50 days<br>Form 7202, Part III, Line 36—10 days |

(Title 26, United States Code, Section 7206(2)).

## COVID-19 RELIEF CONSPIRACY AND RELATED OFFENSES
### (Wire Fraud; Conspiracy to Commit Wire Fraud)

### The Paycheck Protection Program

31. The U.S. Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

32. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and was designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the SBA Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

33. Borrowers were required to use PPP loan proceeds for certain business-related purposes including payroll costs, interest on mortgages, rent, and utilities. The SBA allowed the interest and the principal on the PPP loan to be entirely forgiven if the borrower spent the loan proceeds on such expenses within a designated period of time (usually within eight weeks of receiving the proceeds) and used a specified percentage (usually 60% or 75%) of the PPP loan proceeds on payroll costs.

34. To obtain a PPP loan, a borrower was required to submit a PPP loan application, called an SBA Form 2483 (or some variation thereof depending on the type of applicant and

14

timing of application). Generally, PPP loan applications required borrowers to disclose, among other information, their average monthly payroll and number of employees. These figures were used to calculate how much money borrowers were eligible to receive under the PPP. Beginning in or about March 2021, borrowers could elect to calculate the PPP loan amount based on either average monthly payroll (which was determined by net profit) or gross receipts.

35. PPP loan applications also required borrowers (or their authorized representatives) to acknowledge the PPP rules and to make certain affirmative, good faith certifications to be eligible to obtain PPP loans. For example, borrowers were required to certify that they were in operation as of February 15, 2020; that they had not permanently closed; and that they were either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors. Further, borrowers were required to certify that economic uncertainty had necessitated the loan requests to support ongoing business operations, and that they intended to use loan proceeds only for certain business-related purposes including payroll costs, interest on mortgages, rent, and utilities (as defined in the loan applications and consistent with PPP rules).

36. Borrowers were required to submit documentation with their PPP loan applications showing payroll costs and that they were in business as of February 15, 2020. Such documentation generally included tax returns, Schedules C, and/or bank statements.

37. PPP loan applications were required to be signed by the borrower or an authorized representative of the borrower. By signing PPP loan applications, the borrowers or authorized representatives attested that the information provided in the application and in all supporting documents and forms was true and accurate in all material respects, and that they understood that knowingly making a false statement to obtain a PPP loan was a federal crime.

38.     PPP loan applications were required to be processed by a participating financial institution ("the lender"). If a PPP loan application was approved by the SBA, the lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the loan application, including information about the borrower, the total amount of the loan, and the listed number of employees, was electronically transmitted by the lender to the SBA.

39.     The Economic & Community Development Institute ("ECDI"), based in Ohio, was a financial institution that offered PPP loans to its customers.

40.     To process PPP loan applications for its customers, ECDI sent interstate wire communications from Ohio to SBA computer servers located in Oregon and Virginia.

## Overview of the Wire Fraud Scheme

41.     TOYA BROWN, MALAYSIA BROWN, WALLACE, and MOFFITT recruited individual clients to apply for PPP loans. The defendants intentionally and falsely advised these clients that they were eligible to obtain government funds through the PPP including to start new businesses. Then, the defendants prepared and submitted false and fraudulent PPP loan applications on behalf of their clients, who received loan proceeds through ECDI.

42.     TOYA BROWN, MALAYSIA BROWN, WALLACE, and MOFFITT, along with other return preparers at Major Moves, received a portion of the loan proceeds generated by the false and fraudulent PPP loan applications they prepared and submitted on behalf of their clients.

43.     TOYA BROWN, MALAYSIA BROWN, WALLACE, and MOFFITT also applied for fraudulent PPP loans in their own names or the names of their purported businesses and received loan proceeds through ECDI.

44.     To support the false and fraudulent PPP loan applications, the defendants fabricated documents (including tax returns, Schedules C, and bank statements) to support the

16

applications, on which the defendants falsely represented information such as the existence of businesses, as well as gross receipts and expenses of non-existent businesses.

## STATUTORY ALLEGATIONS

### COUNT FOURTEEN
### (Conspiracy to Commit Wire Fraud)

45.     The allegations in paragraphs 1 through 14 and 31 through 44 of this Indictment are repeated and realleged as if fully set forth here.

46.     Between approximately March 2021 and January 2022, in the Southern District of Ohio and elsewhere, TOYA LYNN BROWN, MALAYSIA BROWN, JOETTA WALLACE, and JASALYN MOFFITT, defendants here, knowingly conspired, combined, confederated, and agreed with each other and with other individuals both known and unknown to the Grand Jury to devise, and intend to devise, a scheme to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and to cause wire communications to be transmitted in interstate commerce for the purpose of executing such a scheme.

### Manner and Means of the Conspiracy

47.     Between approximately March 2021 and January 2022, TOYA BROWN, MALAYSIA BROWN, WALLACE, and MOFFITT prepared and submitted fraudulent PPP loan applications in their own names or on behalf of their purported businesses—even though the defendants knew that they were not eligible for the loans nor were their businesses. The defendants further fabricated information and supporting documents (including tax returns, Schedules C, and bank statements) to submit with the applications to bolster the false claims.

48.     For example, on or about March 31, 2021, MOFFITT created and/or caused to be created a fabricated account statement from the financial institution Current that detailed

17

business transactions dating back to February 1, 2020, when in fact MOFFITT had not opened an account at Current until approximately March 6, 2021. MOFFITT submitted this false document in support of the application for loan x8705 which resulted in the disbursement of $20,833.

49. As another example, on or about April 6, 2021, TOYA BROWN created and/or caused to be created a fabricated account statement from Current that detailed business transactions dating back to February 1, 2020, when in fact she had not opened an account at Current until March 23, 2021. This statement was almost identical to the one that MOFFITT submitted except for the name, address, and account number. Also on or about April 6, 2021, TOYA BROWN created and/or caused to be created a false and fictitious Schedule C for tax year 2020, when in fact she had not yet filed a Schedule C for tax year 2020 with the IRS. TOYA BROWN submitted these false documents in support of the application for loan x8702, which resulted in the disbursement of $20,833. TOYA BROWN subsequently used multiple variations of her business's name and address to apply for additional PPP loans for which she knew she was not eligible.

50. Between approximately March 2021 and January 2022, TOYA BROWN, MALAYSIA BROWN, WALLACE, and MOFFITT also recruited clients to apply for PPP loans and prepared and submitted their applications—even though the defendants knew that the clients were not eligible for the loans. The defendants further fabricated information and supporting documents (including tax returns, Schedules C, and bank statements) to submit with the applications to bolster the false claims.

51. For example, on or about May 27, 2021, WALLACE prepared and filed or caused to be prepared and caused to be filed a PPP loan application for a Major Moves client, Client 13, who was recruited and referred to Major Moves by MALAYSIA BROWN. WALLACE

18

submitted a false and fraudulent Schedule C for tax year 2019 in support of the PPP application, which resulted in the disbursement of loan x9003 in the amount of $11,373.

52.     TOYA BROWN, MALAYSIA BROWN, WALLACE, and MOFFITT shared in a portion of the loan proceeds disbursed to clients as payment for their preparation services and/or for referring the clients to Major Moves for purposes of preparing and submitting PPP loan applications.

53.     As a result of the fraudulent PPP applications, TOYA BROWN, MALAYSIA BROWN, MOFFITT, and WALLACE obtained loans for themselves and clients of Major Moves totaling approximately $273,783.

54.     TOYA BROWN, MALAYSIA BROWN, MOFFITT, and WALLACE diverted the proceeds of the fraudulent PPP loans, in part, to pay for personal expenses.

(Title 18, United States Code, Section 1349)

## COUNTS FIFTEEN THROUGH TWENTY-FIVE
### (Wire Fraud)

55.     The allegations in paragraphs 1 through 14 and 31 through 44 of this Indictment are repeated and realleged as if fully set forth here

56.     On or about the dates detailed in the table below, in the Southern District of Ohio and elsewhere, defendants TOYA LYNN BROWN, MALAYSIA BROWN, JASALYN MOFFITT, and JOETTA WALLACE, for the purpose of executing the scheme to defraud described above, caused to be transmitted by means of wire communication in interstate commerce the writings, signs, signals, pictures, and sounds described below for each count, each transmission constituting a separate count:

19

| COUNT | DEFENDANTS | DATE | LOAN # | BENEFICIARY | AMOUNT |
|-------|-----------|------|--------|-------------|--------|
| 15 | JASALYN MOFFITT | 3/31/2021 | x8705 | Moffitt Tax Pro | $20,833 |
| 16 | TOYA BROWN | 4/6/2021 | x8702 | Brown Tax Pro | $20,833 |
| 17 | JOETTA WALLACE | 4/16/2021 | x8804 | JOETTA WALLACE | $20,465 |
| 18 | JOETTA WALLACE, MALAYSIA BROWN | 4/17/2021 | x8809 | MALAYSIA BROWN | $20,833 |
| 19 | JOETTA WALLACE | 4/23/2021 | x8805 | ATA Business Solutions | $20,465 |
| 20 | JOETTA WALLACE | 4/29/2021 | x8905 | Client 3 | $19,905 |
| 21 | TOYA BROWN | 5/12/2021 | x8910 | Client 6 | $19,629 |
| 22 | TOYA BROWN | 5/12/2021 | x8907 | Client 12 | $10,997 |
| 23 | TOYA BROWN | 5/25/2021 | x9008 | Major Moves Tax Services | $33,450 |
| 24 | TOYA BROWN | 5/25/2021 | x9000 | Major Moves Tax Services LLC | $75,000 |
| 25 | JOETTA WALLACE, MALAYSIA BROWN | 5/27/2021 | x9003 | Client 13 | $11,373 |

(Title 18, United States Code, Section 1343)

**FORFEITURE ALLEGATIONS**

57.     The allegations contained in Counts Fourteen through Twenty-Five of this Indictment are incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(1).

58.     Upon conviction of a violation of 18 U.S.C. § 1343 or conspiracy to violate 18 U.S.C. § 1343, the defendants, TOYA LYNN BROWN, MALAYSIA BROWN, JASALYN MOFFITT, and JOETTA WALLACE, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property that constitutes or is derived from proceeds obtained directly or indirectly as a result of the violation.

20

59.     The property subject to forfeiture includes, but is not limited to, the sum of at least $273,783 in United States currency, which represents the amount involved in the violations alleged in Counts Fourteen through Twenty-Five of this Indictment.

60.     If any of the property described above, as a result of any act or omission of the defendants:

    a.  Cannot be located upon the exercise of due diligence;

    b.  Has been transferred to, or deposited with, a third party;

    c.  Has been placed beyond the jurisdiction of the Court;

    d.  Has been substantially diminished in value; or

    e.  Has been commingled with other property which cannot be divided without difficulty;

21

the United States of America shall be entitled to forfeiture of substitute property under the

provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

A TRUE BILL:

_S/ Foreperson_
FOREPERSON

DATED: 7/30/26

A. TYSEN DUVA
Assistant Attorney General
Department of Justice, Criminal Division


7/30/26

Hayter L. Whitman
Lyndi E. McVey
Trial Attorneys
U.S. Department of Justice, Criminal Division
Tax Section
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001